CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED
9/11/2024
LAURA A. AUSTIN, CLERK
BY: s/C. Kemp
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Criminal Action No. 7:24-cr-00014 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| JOSHUA LEE JENNINGS, ) | By:   Hon. Thomas T. Cullen |
| ) | United States District Judge |
| Defendant. ) | |

Defendant Joshua Jennings ("Jennings") moves to suppress evidence—namely, a laptop computer containing thousands of images of child pornography—seized from his vehicle. Although Jennings concedes that federal agents' search of his home was supported by probable cause, he argues that the separate vehicle search, which was conducted pursuant to a warrant issued by a federal magistrate judge, was not. For the reasons discussed below, the court concludes that the challenged search warrant was supported by ample probable cause. But even if competent judges might disagree on this point, the officers who recovered the evidence from the defendant's car undoubtedly did so in good-faith reliance on the warrant. The court will therefore deny the motion.

### I.   BACKGROUND

On February 23, 2024, a federal magistrate judge issued a warrant to search Jennings's vehicle. The warrant request was based on a 30-page omnibus affidavit submitted by Special Agent Brandon Smock ("SA Smock"), a veteran law enforcement officer and current Homeland Security Investigations ("HSI") agent with experience and specialized training investigating crimes against children. (*See* Gov't Ex. 1 ("Aff.") ¶ 2 [ECF No. 31-1].)

According to SA Smock, in January 2024, U.S. Department of Homeland Security investigators discovered that an internet protocol ("IP") address associated with an apartment in Roanoke was accessing child sexual abuse material ("CSAM")—or, as it is more commonly known, child pornography—through BitTorrent, a public peer-to-peer file sharing platform. (Aff. ¶¶ 23–32.) Investigators later determined that Jennings was the listed IP subscriber, and that he resided at the apartment. (*Id.* ¶¶ 35–36.)

As it turns out, Jennings had an extensive criminal history, including prior felony convictions related to child pornography. Investigators also learned that he was on active state probation and that he had previously violated terms of his probation numerous times. (*Id.* ¶¶ 34, 38.) When SA Smock spoke to Jennings's probation officer, the probation officer informed SA Smock that, under the terms of his probation, Jennings was only authorized to possess an Android cellphone and a PlayStation 5 video game system. (*Id.* ¶ 38.) The probation officer also told investigators that Jennings's cell phone was equipped with specialized monitoring software. (*Id.* ¶ 39.) Given this, the knowledge that the IP address was using BitTorrent, and the technological challenges associated with accessing BitTorrent with a cell phone or PlayStation 5, investigators deduced that Jennings likely possessed "other unauthorized electronic devices and/or storage media." (*Id.*)

SA Smock detailed the above facts, and much more, in the affidavit that he presented to the federal magistrate judge in support of his application for three search warrants—one for Jennings's apartment, one for a 2014 Jeep SUV (which was registered under Jennings's name to his home address), and one for his person. In making his case for the existence of probable cause to support all three warrants, SA Smock also noted that consumers of child

pornography frequently possess their CSAM, including video files, on desktop or laptop computers, as well as cell phones, and that these illicit files are easily transferred between different types of devices using cloud storage platforms. (*Id.* ¶ 40.) Based on the small size and portability of these electronic devices, SA Smock posited that Jennings's vehicle was just as likely to contain CSAM evidence as Jennings's apartment, whether the SUV was located at the residence, where it was registered, or not. (*Id.*) The magistrate judge ultimately approved all three search warrants based on the omnibus affidavit.

Investigators executed the warrants two days later. They first searched Jennings's residence and discovered multiple electronic devices that were not authorized under the terms of his state probation.[1] The agents informed Jennings's probation officer of this, and obtained a warrant for Jennings's arrest. Later that day, Jennings was arrested on the probation-violation warrant in the parking lot of his workplace. While executing the federal search warrant for his Jeep at the time of this arrest, agents discovered an HP laptop inside a black bookbag on the floorboard of his vehicle. That laptop contained the CSAM at issue. Jennings was subsequently indicted for possession of the same, and the instant motion to suppress followed.[2] (*See* ECF No. 25.)

## II.   ANALYSIS

Jennings moves to suppress the evidence of CSAM recovered from his vehicle pursuant to the federal search warrant on two grounds. First, he contends that the magistrate

---

[1] Apparently, none of the unauthorized devices found at his residence contained CSAM materials.

[2] On August 26, 2024, the court held oral argument on the motion. Since Jennings only challenges the legal sufficiency of the warrant itself—and because the relevant facts underlying that legal issue are set forth in the 30-page affidavit—the parties stipulated that no additional evidence needed to be taken at this hearing.

judge who authorized the warrant did not logically conclude that CSAM evidence would be found in his vehicle based on the omnibus affidavit. Second, Jennings argues that the good-faith exception does not save this evidence because the warrant affidavit was so lacking in indicia of probable cause such that a reasonable officer would not have relied on it. The court will address each argument in turn.

**A.  Probable Cause**

Jennings appropriately concedes that the omnibus affidavit established probable cause that he was involved in possessing CSAM, and that evidence of this crime would be found at his residence. But he argues that the search warrant for his vehicle was invalid because the affidavit provided insufficient grounds for concluding that these illicit materials would also be found there. The court disagrees.

Because a magistrate judge issued the challenged warrant, the court does not assess probable cause *de novo*. Instead, it applies "a deferential and pragmatic standard to determine whether the [issuing] judge had a substantial basis for concluding that a search would uncover evidence of wrongdoing." *United States v. Bosyk*, 933 F.3d 319, 325 (4th Cir. 2019). In so doing, the court is guided by the general maxim that probable cause is not a high bar; it requires only "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

But "[p]robable cause to believe that a person is engaged in criminal activity is not *carte blanche* to search all their personal effects. There must also be some nexus between the crime and the place to be searched—'a substantial likelihood that evidence of a crime will be found in a particular place.'" *United States v. Orozco*, 41 F.4th 403, 409 (4th Cir. 2022) (quoting *United*

*States v. Allen*, 631 F.3d 164, 173 (4th Cir. 2011)). Whether such a nexus exists is a "practical, commonsense determination" that is to be made by the authorizing judge. *Allen*, 631 F.3d at 173. "And it may be established by 'the normal inferences of where one would likely keep' the evidence being sought." *Orozco*, 41 F.4th at 409 (quoting *Allen*, 631 F.3d at 173).

The 30-page affidavit allowed for the reasonable inference that evidence related to CSAM would be found in Jennings's vehicle. SA Smock described in painstaking detail how he determined that an IP address tied to Jennings's residence was likely accessing the BitTorrent network to download child pornography. SA Smock subsequently determined that Jennings had previously been convicted of multiple felonies related to CSAM and that he was a registered sex offender on active state probation, which he had violated numerous times. As a condition of his probation, Jennings's use of computers and other electronic devices was highly restricted. His probation officer confirmed that he was only authorized to possess an Android phone and a PlayStation 5. The probation officer explained that this cell phone was equipped with specialized monitoring software to prevent Jennings from accessing child pornography. And SA Smock noted, based on his training and extensive experience investigating child pornography offenses, that it was unlikely that Jennings was using his video-game system to access BitTorrent.

Importantly, SA Smock went on to explain that modern consumers of CSAM typically utilize computers to access illicit networks to download digital CSAM images in the first instance. The agent further noted that these digital CSAM files are readily transferable from computers to smaller, portable devices, including cell phones, using cloud storage platforms. Based on his 12 years' experience investigating CSAM cases, SA Smock proffered that

consumers of CSAM typically maintain their collections of illicit images in "safe, secure, and private" environments—sometimes for many years—and that they "prefer not to be without their child pornography for any prolonged period of time." (Aff. ¶¶ 6(c), (e)). Accordingly, he averred that Jennings was likely in possession of small, portable electronic devices that could be hidden in various types of containers, such as bags or boxes within his immediate control, or in his vehicle.

This was a valid assumption, based on his training and years of experience investigating similar types of crimes (*see* Aff. ¶ 2), and one that supports the magistrate's decision to issue a warrant to search Jennings's car. The key inference undergirding this assumption was that Jennings was using at least one unregistered electronic device in violation of his probation to access, download, transfer, and possess CSAM. This inference was eminently reasonable, given that the IP address associated with Jennings's residence was, in fact, being utilized to access CSAM, and that known technological limitations of the two electronic devices Jennings was allowed to possess made it highly unlikely that he was using either for that illicit purpose. With that core inference in place, it was also reasonable to deduce that Jennings possessed a smaller portable device that could be concealed (and secured) from the prying eyes of his state probation officer during a home visit.[3] As such, it was not a reach to conclude that Jennings's vehicle, which was registered to his residence, was just as likely a hiding or storage location for these smaller illicit devices as his kitchen cupboards or his bedroom closet. Indeed, given the restrictive circumstances of Jennings's probation, his vehicle was among the most likely places

---

[3] Given Jennings's history of probation violations, common sense dictates that the last thing he would use to view and store child pornography was an unauthorized desktop computer prominently displayed in his den or bedroom.

for him to store his child pornography. This conclusion was bolstered by the agent's assertions, based on his extensive training and experience, that collectors of CSAM "frequently possess" their CSAM collections on cellular phones, and that a phone or tablet would likely be found in Jennings's vehicle. (Aff. ¶¶ 40, 45(a).)

Jennings makes three primary arguments to avoid this conclusion. First, Jennings contends that the "normal inferences test," as applied to the typical CSAM case, is predicated on the assumption that CSAM consumers possess these materials in their homes. In support of this argument, Jennings cites to numerous decisions upholding the validity of search warrants for residences despite staleness concerns. (*See* Def.'s Mot. to Suppress at 6–7.) But as the government points out, this argument misses the mark in terms of logic and common sense. Courts have long recognized that CSAM offenses frequently occur within the privacy of the home, but it does not necessarily follow that evidence related to those offenses is unlikely to be found in other locations. Indeed, given Jennings's unique probationary status and the well-established tendency of modern CSAM consumers to transfer digital files to portable electronic devices, including their cell phones, it was reasonable to infer that CSAM would also be found elsewhere.

Second, Jennings contends that SA Smock failed to expressly link evidence or instrumentalities related to CSAM to his vehicle by attesting that he was known to carry or store portable electronic devices in it. While it is true that SA Smock didn't expressly draw this connection in his affidavit, he wasn't required to do so. *See Orozco*, 41 F.4th at 410 ("[The affidavit] need only supply enough facts for a neutral magistrate, who may make reasonable inferences to fill in any logical gaps, to find the required nexus."); *Bosyk*, 933 F.3d at 328 (noting

that the magistrate judge is entitled to make reasonable inferences about the location of evidence based on the information contained in the affidavit, her familiarity with the crime at issue, and her common-sense understanding of human behavior). Courts have long rejected imposing a "hypertechnical," "magic-words requirement" for search warrant affidavits. *Orozco*, 41 F.4th at 410 ("The affidavit need not dot every 'i,' cross every "t," or (as Orozco suggests) 'close' every inferential 'loop.'"). The affidavit provided more than enough information from which the magistrate judge could logically draw that inference for herself.

Third, at the hearing on the motion, Jennings argued that by extending the ambit of probable cause to his vehicle, the magistrate judge implicitly authorized searches far outside the boundaries of what would normally be permitted based on the facts presented. To accept the magistrate judge's reasoning, Jennings contends, a reviewing court must concede that the affidavit effectively green-lighted searches of locations far outside his home, including a storage locker at his place of employment. The court disagrees. Jennings's vehicle was registered to and regularly located outside his residence. Thus, unlike a work storage locker, there was a legal and physical nexus between Jennings's residence and his vehicle. Because of that nexus, the magistrate's inference that CSAM would be found in the vehicle was reasonable.

In sum, the search warrant for Jennings's vehicle was adequately supported by probable cause.

## B. Good-Faith Exception

Jennings also argues for suppression because, he contends, the omnibus affidavit lacked any indicia of probable cause to justify relying on it to search his vehicle. The court

disagrees. Even if reasonable judges might disagree about the existence of probable cause on these facts, the officers unquestionably acted in good faith in relying on the warrant.

Under the good-faith exception adopted by the Supreme Court, a court may not suppress evidence obtained under a "subsequently invalidated" warrant, unless "a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. Leon*, 468 U.S. 897, 922 n.23 (1984). The Court explained that an officer will not be found to have acted with "objective reasonableness"—and thus will not be afforded safe harbor on the exception—under any of four scenarios, only one of which applies here. According to Jennings, the good-faith exception does not apply in this case because the omnibus affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923.

Prosecutors seeking to invoke the good-faith exception face a "less demanding showing than the substantial basis threshold required to prove the existence of probable cause in the first place." *United States v. Byrum*, 293 F.3d 192, 195 (4th Cir. 2002). That is, "mere insufficiency of the affidavit to support probable cause will not preclude the application of the *Leon* good[-]faith exception." *United States v. Doyle*, 650 F.3d 460, 470 (4th Cir. 2011). The determinative issue "is not simply whether the warrant was deficient, but rather whether it was so deficient that relying on it was unreasonable." *Id.* at 471. Moreover, "[s]uppression on such grounds is 'inappropriate' when an affidavit produces 'disagreement among thoughtful and competent judges as to the existence of probable cause.'" *Bosyk*, 933 F.3d at 333. Put another way, if competent judges reviewing the evidence presented in the affidavit could conclude that

probable cause existed to justify the search, then the good-faith exception applies, regardless of whether other judges might reach the opposite conclusion.

Such is the case here. Although this court concludes that sufficient probable cause supported the magistrate judge's issuance of the warrant for Jennings's vehicle, other jurists might disagree. Regardless, the agent's 30-page affidavit bears the hallmarks of a thorough and analytically rigorous search-warrant application. SA Smock, an experienced federal agent, provided detailed information about his extensive background investigating crimes against children, including internet-based CSAM offenses. He outlined, in painstaking detail, the well-established propensities of modern CSAM consumers, including the typical ways that they obtain, transfer, and protect these illicit digital images. SA Smock also provided a detailed overview of peer-to-peer file sharing, including key attributes of the specific software utilized in this case and how it works. He then described the step-by-step approach undertaken by the investigative team to trace the internet activity at issue to Jennings's residence. And critically, SA Smock relayed key details of Jennings's probationary status and the attendant technological restraints that had been imposed upon him as a result. These details were particularly important because they allowed the magistrate to make inferences about the type of unauthorized device Jennings was likely using to obtain CSAM (i.e., small, portable) and the various locations where he would likely hide such a device from his probation officer. In sum, the lengthy, detailed, tailored, and analytically rigorous affidavit presented here was *far* from lacking in indicia of probable cause. *Cf. United States v. Wellman*, 663 F.3d 224, 229 (4th Cir. 2011) ("Further, the dates provided in the search warrant application demonstrate that the affidavit was not a hastily-assembled document based on a single tip, but was the product of

a six-week investigation. Upon examining the totality of this information before the issuing judge, we conclude that the affidavit supporting the warrant was not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."). Accordingly, even if—contrary to the court's conclusion—the warrant was not adequately supported by probable cause, the good-faith exception would apply in this case.

### III. CONCLUSION

For the foregoing reasons, Jennings's motion to suppress will be **DENIED**.

The Clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

**ENTERED** this 11th day of September, 2024.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE